<div style="margin-left:auto">ALBANY,</div>
<div style="margin-left:auto">1804.</div>

<div style="margin-left:auto">R. Furman,</div>
<div style="margin-left:auto">v.</div>
<div style="margin-left:auto">J. Coe & oth.</div>

neur and Kemble, nothing more was decided, according to my understanding of it, than that factors, who were in advance, and under heavy responsibilities for their principal, had no lien on his securities in their hands, and that in a special action on the case against them for misconduct, it was not only unnecessary in the plaintiff to prove a special damage, but incompetent for the defendant to show their principal had been benefited by this alleged misconduct. If Furman was guilty of a breach of trust, it could only be for so much as was necessary for the support of these children; but that could not affect the surplus, which must have remained in his hands after advancing what Susannah Coe asked of him. It is however sufficient to say, that Mrs. Coe had no right to make this demand, and that it does not appear with sufficient certainty that it was made.

In this last opinion Kent, Justice, concurred, contra Lewis, C. J. who, with the majority of the court, being for a reversal, the decree was accordingly reversed in toto.

<br>

<div style="text-align:center">

James Grant and others, *Appellants,*

And the President, Directors, and Company of the Bank of the United States,   } *Respondents.*

James Grant, *Appellant,*

And James Bissett, Nathaniel Lawrence, Thomas Morton, the President, Directors, and Company of the Bank of the United States, Richardson Underhill, and Henry Remsen,   } *Respondents.*

</div>

<div style="float:left;width:20%">
Registered mortgages must be paid off according to the dates of their registry. The doctrine of tacking does not apply between registered mortgages.
</div>

JAMES BISSETT, being seised in fee, of 4 lots in the city of New-York, on the 10th of May, 1800, mortgaged to Peter Onderdonk in fee, three of them, for $1125. On the 10th of the same month, this mortgage was duly registered, and shortly after fairly assigned to the President, Directors, and Company of the Bank of the United States, for a full consideration. On the 12th of June, 1800, Bissett mortgaged all

the four lots to John Taylor, in consideration of $2500. This consideration was made up in the following manner : $506 cash paid to Bissett; $857 agreed to be laid out on the premises, and $1147, in debts due to Taylor and others, assumed by him on account of the mortgagor. On the 27th of the same month of June, Taylor assigned the bond and mortgage to Alexander M'Gregor, who refunded to Taylor $476 he had paid to Bissett, and entered into the responsibilities Taylor had assumed, for the performance of which, M'Gregor offered to give Bissett his bond. On the day following, the 28th, this mortgage also was duly registered. On the 2d of July following, Bissett mortgaged to the President, Directors, and Company of the Bank of the United States, for $1950, the three lots before mortgaged to Onderdonk, and they, on the same day caused their mortgage to be duly registered. On the third of June, 1801, M'Gregor assigned to James Grant, the Appellant, the mortgage to Taylor. After these transactions, Bissett becoming a bankrupt, the Bank filed a bill in chancery against him, his assignees, Taylor, M'Gregor, the appellant, and several others of the mortgage and judgment creditors of Bissett, praying that they might be ordered to come in and redeem both the mortgage to Onderdonk, and that to the Bank, or that the premises might be sold to discharge what was due upon them. To this bill Grant appeared and answered, insisting that as the bonâ fide holder, by assignment of the mortgage second in date and time of registering, he had a right to be paid out of the mortgaged premises next after the mortgage to Onderdonk. Grant, as assignee of the mortgage to Taylor, filed also his bill against Bissett, his assignees, the President, Directors, and Company of the Bank of the United States, and other mortgage creditors of Bissett, praying that the lot of ground mortgaged to Taylor, and not included in the mortgage to Onderdonk, might be sold, and the proceeds applied exclusively to the discharge of Taylor's mortgage; and as to the other three lots, that they might be sold, and the money arising thereby, be appropriated in the first place to the payment of the mortgage to Onderdonk, and after satisfying the same, that the surplus should go to make up the deficiency, if any, which might arise in satisfying the mortgage to Taylor, by the sale of the fourth lot. To this latter bill all the defendants, ex-

Q

ALBANY,     cept the President, Directors, and Company of the Bank of
  1804.     the United States, appeared, answered severally, and virtual-

James Grant  ly disclaimed or submitted to the judgment of the court. The
and oth.     Bank, however, answering under their common seal, alleged,
  v.
U. S. Bank.  that when they took their mortgage on the 2d of July, 1800,
James Grant,
  v.         they had no notice of that to Taylor, and that holding the
James Bissett first mortgage in fee to Onderdonk, they had a right to insist
and oth.     on being first paid the amount of both securities. They also
             alleged fraud in Taylor, in procuring his mortgage from Bis-
             sett. Both causes being at issue, came on by consent toge-
             ther. In that by the Bank of the United States, the complain-
             ants did not examine any witnesses. In that by Grant, he
             examined two witnesses, who were cross-examined by the
             Bank, one of whom proved personal notice of the mortgage to
             Taylor, to one of the Directors before the mortgage to the
             Bank, and both proved the mortgage held by Grant to have
             been given for a full consideration. The only evidence to
             impeach this, was derived from an answer of one of the per-
             sons made a co-defendant with Grant, against the reading of
             which he strenuously objected. It was, however, decreed,
             that the Bank should be first paid out of the proceeds of the
             sales of the three lots, the amount due on both the mortgages
             held by them, before any part thereof should be applied to the
             satisfaction of the mortgage held by Grant, which it was de-
             creed should not be deemed a valid security for the amount
             mentioned therein; but that it should be referred to a master,
             to inquire what part thereof had been actually advanced to, or
             for the use of Bissett, either by Taylor or M'Gregor, and
             that so much only, as the master should find and report thus
             due, should be allowed and paid to Grant, in satisfaction of
             his mortgage, out of the proceeds of any of the mortgaged
             premises. These decrees being appealed from, his Honour
             the Chancellor now assigned his reasons.

             Mr. President—On this case, it will be necessary to de-
             termine, 1. In what order the mortgages in question are to
             be satisfied? 2dly. What ought to be the amount of satis-
             faction, as to the one executed to Taylor? As connected
             with the first question, *the right of tacking* has been denied;
             but our registering act, it appears to me, is not dissimilar in
             its provisions, and certainly similar in its object, to those re-
             ferred to in the authorities cited. Both the British and our

.act are calculated to afford a test, to determine the priority of satisfaction, as relating to mortgages on the same subject, leaving all other legal and equitable consequences to attach, as if the registry had not existed. I take it, therefore, the doctrine of tacking has not been altered by our statute, requiring the registry of mortgages. The complainants, in their answer to the bill of the defendant, Grant, expressly deny their knowledge of the existence of the mortgage to Taylor, and his deposition discloses no facts which can affect them, with notice prior to the execution of the mortgage to them; for, though he deposes that he gave the information of the circumstances attending the taking of his mortgage to Robert Lenox, one of the directors, he does not ascertain the time otherwise than by declaring, that " *he thinks it was* " *before the said President and Directors had taken their mort-* " *gage.*" This is too vague and indeterminate, and hence it is not necessary to give an opinion on the question, whether the notice, if fully proved, was well-given to a Director? If the complainants had no notice of the existence of Taylor's mortgage, they are completely within the rules adopted by this court, on the subject *of tacking ;* but it can apply only to the lots mortgaged to them, and the fourth lot must be exclusively appropriated to satisfy the mortgage to Taylor ; but it appears that $857 79 cts. of the sum, for which it purports to have been given, were to be applied to the improvement of the mortgaged premises, and there is no evidence that it has been so applied : and it appears from the answers and depositions of the defendants, that this point, though that was not necessary, as they took their assignments subject to all equities, has been invariably attended to, in the several transmutations of the mortgage. Hence, there is not the least ground for permitting it to be retained by Grant, the assignee. It must, therefore, be referred to a master, to ascertain the amount due on the two mortgages to the complainants and Onderdonk, and the sum due on the mortgage executed to Taylor ; but in making the statement on the latter, the sum of $857 79 cts. with the interest accrued thereon, must be deducted, unless it shall appear to the master, that any part of that sum has been actually applied to finishing the houses erected on the mortgaged premises, in which case proper allowances must be made for the expenditure. The question of costs, and all other di-

ALBANY,
1804.

James Grant
and oth.
v.
U. S. Bank.
James Grant,
v.
James Bissett
and oth.

ALBANY,
1804.

James Grin
and oth.
v.
U. S. Bank.
James Grant,
v.
James Bissett
d oth.

rections, to be reserved, until the coming in of the master's report.

Riggs for the appellant. We come before this court, insisting on the right of James Grant, as holder of a second mortgage, duly registered, to be satisfied in preference to a third mortgage, given and registered subsequent to the second, though such third mortgage is held by the same person who has a first mortgage, registered previous to our second. Against this right, the English doctrine of tacking is relied on. But with them there is no general register act, as with us. Their statutes on this subject are partial laws; and among the variety of decisions reported upon them, there is not one where the contest has been between two registered mortgages. It may not, however, be useless to examine how far, on the principles of the British adjudications, their rules will apply to, and support the present decree. It is a maxim with them, that, if a first mortgage be purchased in, to aid a junior incumbrance, such first mortgage must be forfeited. 1 Pow. on Mort. 531. In the present case, the mortgage money was not payable before the end of the year, and the assignment to the Bank was within four months. On this ground, therefore, the law is against the Bank. There is also another. To enable a puisne mortgagee to tack, he must have lent his money without notice of the mesne incumbrances. 1 Pow. on Mort. 537. 3 Atk. 238 *. 2 Vern. 271 †. 2 Fonb. 301. n. (b.) The evidence of notice to the bank is complete. Their denial not being upon oath, but under seal, cannot weigh against the testimony of Taylor, and is in itself an absolute nullity. For as a body corporate, having neither soul nor conscience, they cannot be sworn, and are not liable to be punished for perjury. Against them, therefore, and their denial, the evidence of one witness is sufficient, though, unaccompanied by circumstances, it might not avail against a natural person. Though the notice was not to the president, yet, being to a director, it is good presumptive notice; and by such, a party is as much affected, as by actual intimation. 2 Fonb. 146 to 155. Besides, as our act is general ‡, the registering alone ought to be considered as notice. It is enough to set a person on inquiry, and that has always been held sufficient to affect with notice. 1 D. & E. 755 §. With us, registering is like docketing of judgments, and that is invariably deemed to

* Mead v. Ld. Orrery.
† Saunders v. Dehew.

‡ In Collet v. De Golls and Ward, Forrest. 65, it was ruled that the publication in the Gazette of the issuing a commission of bankrupt, is notice to all the world, because such as is prescribed by an act of parliament, in which the assent of all is implied.
§ Goodtitle v. Morgan.

make a purchaser take subject to the charge. Mr. Powell, in his treatise *, does, we admit, state as his opinion, that the doctrine of tacking would be allowed between registered mortgages. It is, however, but his opinion, and that upon the operation of the 2 and 3 Anne, ch. 4, and the 7 Anne, ch. 20. But those statutes have not such words as our act. Our law says †, " In case of several mortgages of the same premises, " or any part thereof, the mortgage or mortgages which shall " be first registered, shall have preference in all courts of law " and equity, according to the times of the registry of such " mortgages respectively." If the decree complained of is permitted to stand, this part of the act is repealed. As to the sums actually advanced by Taylor, M'Gregor, and Grant, if any investigation of them was to take place, it ought to have been by examination of witnesses, and not before the master; besides, it is sworn that they were to the full value, and against this the answer of a co-defendant could not be read; for there is no rule better established, than that the answer of one defendant shall not be read against another ‡. 2 Ves. J. 11 §. 2 Atk. 303 ||. Ibid. 39 **.

Van Vechten for the respondents. It is a settled principle, that where equitable and legal titles unite, they shall overbalance those which are merely equitable. For the equities being equal, neither the one nor the other has, on the score of conscience, any claim to a preference over the other; there can then exist no kind of reason, for disturbing or taking away the legal rights and estate of the other. The courts have, therefore, always left the party having both the legal and equitable estate, in full possession of his rights. 2 Pow. on Mort. 636 to 644. Wherever legal and equitable estates meet, the union is held to destroy all mesne equities. Stra. 240 ††. From these positions, has been derived the doctrine of tacking. The act does not vary the law on this point. It orders, that they shall be paid according to the dates of their registering, that is, where there is only a set of successive incumbrances regularly appearing. But it does not prevent attaching to the first registered mortgage subsequent rights, which enable the puisne mortgagee to protect his estate, by that which he acquires. For as the act is meant to operate only between registered and unregistered mortgages, when all are registered, they stand as if the act had never passed. The puisne mort-

ALBANY,
1804.

James Grant
and oth.
v.
U. S. Bank.
James Grant,
v.
James Bissett
and oth.

* Page 641.
† 1 Rev. Laws,
481. sec. 2.

‡ Where the
defendant
professes not
to recollect,
but states that
another de-
fendant knows
the fact, the
answer of the
defendant thus
referred to,
may be read
against him.
1 P. W. 300.
§ Jones v. Tur-
berville.
|| Lockwood v.
Ewer.
** Hill v.
Adams.
†† Hagshaw v.
Yates.

ALBANY,
1804.

James Grant
and oth.
v.
U. S. Bank.
James Grant,
v.
James Bissett
and oth.

gagee has, by his diligence, acquired a preference. If the registering is to be notice, then the second mortgagee has been guilty of a laches, in not purchasing in the first mortgage, to protect himself. Not having done so, we had a right to do it, and to cover our equitable, by Onderdonk's legal estate. The difference between the effect of general and particular statutes, is imaginary. The only actual one is, that under one, you must search in all cases; under the other, only in those arising within a specific county. The principles to regulate in each are the same, for the law is in both the same, though the limits within which it is to be applied are different. The notice relied on, was not given to the proper person; it ought to have been to the head of the corporation, the president. It is not, however, sufficiently alleged; it is merely " as he thinks." It ought to have been strongly evidenced, and such as to almost impute a fraud. 2 Pow. on Mort. 639. Jolland v. Stainbridge, 3 Ves. J. 478. But, allowing all the force asserted to the provisions of our act, still it can never be contended, that they were meant, by merely registering, to protect fraud. It is in evidence, from the confessions of one of the defendants, that the full value for which the mortgage was given, has not been paid; and as Grant, in his answer, states his title to have been derived from Taylor, he refers to what Taylor says respecting that title, and makes his answer evidence for the reasons in the anonymous case, in 1 P. Will. 300 *, and Wyat's Prac. Reg. 75.

* See ante
page 117, note
there ‡.

Hamilton in reply. Allowing the doctrines of the other side to be correct, as to the reasons on which tacking has been introduced, and that the registering a mortgage is notice to the second mortgagee, it must equally be so to the third, and then a third mortgagee can never stand on equal equity with a second. This, therefore, subverts all the argument, as to the equal equity on which tacking is said partly to rest. But the decisions in England can never, on this subject, be applicable to cases here. The words of our law, take them out of the operation of the English precedents. They proceed on the settled maxims of their courts. They are not directed or controlled by the statute law; for the 2, and 3, and the 7th, of Anne, do not propose the regulation of registered securities. The act of our legislature was framed for the purpose of settling their priorities. Its object was to secure lenders of money,

This cannot be effected, if the construction on the other side prevail. A second mortgagee, after due search, may repose on the estate being adequate to the payment of his demand, and that of his senior incumbrancer; the very next day a cunning or colluding third person lends a further sum, takes in the first mortgage, and cuts out the second. The principle of tacking, encourages fraud; it supersedes that necessity of searching public offices, which ought always to be induced, when title deeds are not shown to the lender. This not being done, ought to lead to inquiry, the neglect of which is what the Lord Chancellor, in 1 Eq. Ca. 331, calls filthy negligence *. The express words of our law, are our reliance. They destroy all that system of artificial reasoning, as to taking in the legal estate, to protect the equitable; for, by the act, a priority at law is given to a second registered mortgage over a third; nay, it gives also in terminis the superior equity, and this on equitable principles; for, where there is a law ordaining a registry to be made of mortgages, search and inquiry at the office is at least an equitable duty. As to the denial of notice by the bank, under their seal, it is enough to say, the only reason why an answer is evidence, is from being under oath. Whatever is not so, cannot be testimony, except as to records, and cases of confession. That there was not an original full valuable consideration from Taylor, allowing it to be so, is nothing to Grant; for a transferable security, though, in its origin made on a less consideration than it purports, becomes, in the hands of a bonâ fide assignee, operative to its full amount. Even fraud, except where positive law creates the security, is, by a fair assignment, for full and valuable consideration, purged, so far as it respects the assignee. The inquiry, therefore, into the sums advanced by Taylor and M'Gregor, is not to be supported. The nature of the considerations cannot be questioned. Money paid, money to be laid out, and assumptions of debts—both law and equity must, and do, allow their validity. On every ground, therefore, we contend the decree must be reversed.

Spencer, J. The Chancellor has adopted the rule of the court of chancery in England, which is, that where parties have equal equity, and one of them has a legal advantage, not to deprive the one, of the legal preference he has obtained. That this rule is established there, I fully agree; and, unless our statute has created a rule on this subject peculiar to our

*Margin notes:*

ALBANY,
1804.

James Grant
and oth.
v.
U. S. Bank.
James Grant,
v.
James Bissett
and oth.

* Crassa
negligentia.

ALBANY,
1804.

James Grant
[and oth.
v.
U. S. Bank.
James Grant,
v.
James Bissett
and oth.

own jurisprudence, I shall acquiesce in this part of the deci-sion. For, I do not think that the registering the mortgage is upon legal principles notice of its existence; though, was the point now for the first time to be decided, I should concur that it ought so to be considered; the contrary, however, is too well established to be drawn in question. Nor do I consider the notice given by Mr. Taylor to Robert Lenox, either actual or constructive notice. It is left quite uncertain at what period this notice was in fact given; and, if given in time, it does not appear that Mr. Lenox was present, when Bissett became indebted to the Bank, or gave the mortgage, or that Mr. Lenox ever communicated it to the board. They deny such notice by their answer; and, although it is not, nor could it be under oath, yet it is certainly sufficient to repel the vague testimony of Mr. Taylor. This brings me to the consideration of our statute concerning mortgages. It provides, that, " in case of several mortgages of the same pre- " mises, or any part thereof, the mortgage or mortgages, " which shall be first registered, shall have preference in all " courts of law and equity, according to the times of the regis- " try of such mortgages respectively." It appears to me, that the statute has abolished, with respect to registered mortgages, the right of tacking a junior to a senior mortgage, and thus excluding an intervening one. They are to have preference in all courts of law and equity, according to the times of their respective registry. To allow a junior mortgage to be paid first, is denying to an elder mortgage the preference the statute has given. The statutes of 2d and 3d Anne, ch. 4th and 7th, Anne, ch. 20th, though affording a preference to registered over unregistered mortgages, do not determine, as our statute does, the preference they are to have, or in what order registered mortgages are to be redeemed or satisfied. Though it was truly observed by the appellants' counsel, that there are no decisions in England to be met with, denying the principle now advanced. I am therefore of opinion, that in this respect, the decree of his Honour the Chancellor ought to be reversed. The remaining question is, whether the mortgage held by Grant is to be considered a valid security, for the amount therein mentioned, and thereby secured? It will be proper, first, to consider, what is, and what is not evidence in the cause. In the bill filed by the Bank, against Grant and

ALBANY,
1804.

James Grant
and oth.
v.
U. S. Bank,
James Grant
v.
James Bissett
and oth.

1 P. W. 300.
2 Atk. 302.
Ibid. 39.

others, John Taylor and Alexander M'Gregor are made co-defendants, and the respondents counsel, considering some parts of their answers as operating in their favour, have dwelt upon the facts disclosed by them. I have no hesitation in saying, that the answer of one co-defendant is evidence neither for, nor against the other. The authorities cited maintain this position. It appears from exhibits and testimony, that the consideration of the mortgage given by Bissett to Taylor, was money advanced by Taylor to Bissett, money owing by Bissett, and assumed to be paid by Taylor, and a balance of between 8 and $900, to be paid in finishing certain houses on lots included in the mortgage. It appears that Taylor, about the 20th of June, assumed debts, and became responsible to Bissett's creditors, to the amount of about $1000, besides the sum advanced. It further appears, that Alexander M'Gregor, to whom the mortgage was assigned by Taylor, as a consideration for that assignment, refunded money to Taylor, which he advanced to Bissett, and also, for the purpose of securing a small demand he had against Bissett in his own right, and another, as administrator of one Cunningham, and also, in consideration of his becoming responsible to sundry persons, for claims which they had against Bissett. For the performance of the agreement thus made by M'Gregor, he executed his bond to Taylor, and he offered to Bissett to guarantee its fulfilment. Though the business was transacted loosely between Bissett and Taylor, it appears to me, there exists no pretence of fraud; and as to the validity of such consideration, I have as little doubt. Under these circumstances, the mortgage originally given to Taylor, was assigned to Grant. There is nothing tending to show that Grant did not advance the full amount of the consideration, if the answer of M'Gregor be not evidence, and that it is not, I have before said. I am of opinion, that the decree be reversed. That after applying the proceeds of the one lot, included in the mortgage to Taylor, and not in the others, towards the satisfaction of the mortgage held by Grant, the proceeds of the sale of the three lots, after satisfying the principal and interest due on the mortgage to Onderdonk, and held by the Bank, be applied to the satisfaction of the principal and interest of the mortgage held by Grant, considering the same as a valid security for the entire sum mentioned therein, and secured thereby.

R

ALBANY,
1804.

The other judges and residue of the court concurring, the decree was unanimously reversed. Lewis, C. J. however, observed, that he thought the mere registering a mortgage was notice to subsequent incumbrances.